IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE MATOS, | ß | |
| | ß | |
| Plaintiff, | ß | |
| | ß | |
| v. | ß | CIVIL ACTION NO. H-07-4273 |
| | ß | |
| MICHAEL J. ASTRUE, | ß | |
| COMISSIONER OF THE SOCIAL | ß | |
| SECURITY ADMINISTRATION, | ß | |
| | ß | |
| Defendant, | ß | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court in this social security appeal is Defendant's Motion for Summary Judgment with Supporting Memorandum of Law (Document No. 15).[1] After considering the motion for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, and the decision of the Commissioner is AFFIRMED.

I. **Background**

Plaintiff, Jose Matos ("Matos"), brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. 405 (g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying his application for

---

[1] On March 17, 2008, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 14.

disability insurance benefits ("DIB").

On February 3, 2005, Matos applied for DIB, claiming he has been unable to work since January 1, 1975, as a result of an accident that burned 90 percent of both his legs. (Tr. 99-103, 150). The Social Security Administration denied his application at the initial and reconsideration stages. (Tr. 18-29). Matos subsequently requested a hearing before an administrative law judge ("ALJ"). (Tr. 30). The Social Security Administration granted his request, and the ALJ held a hearing on April 23, 2007, which Plaintiff attended with his attorney. (Tr. 30, 393-413). On June 27, 2007, the ALJ issued his finding that Plaintiff is not disabled. (Tr. 13-16). The Commissioner found that Plaintiff's insured status expired on December 31, 1986, and thus his disability must be established prior to that date. (Tr. 15, 24, 29). At step one, the ALJ determined that plaintiff engaged in substantial gainful activity from 1977 through 1980. (Tr. 15). At step two, the ALJ further found that plaintiff had no severe medically determinable impairment prior to December 31, 1986, and therefore was not disabled within the meaning of the Act. (Tr. 15-16).

Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. 30). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad public policy issue may affect the public interest. 20 C.F.R. ß 404.970, 416.1470. After considering plaintiff's contentions in light of the applicable regulations and evidence, the Appeals Council concluded on September 28, 2007, that there was no basis on which to grant review. (Tr. 5-9). The ALJ's findings and decision thus became final.

Plaintiff timely filed an appeal of the ALJ's decision denying his application for benefits.

42 U.S.C. ß 405(g).  The Commissioner has filed a Motion for Summary Judgment and a Memorandum in response to plaintiff's application for appeal. (Document No. 15).  This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 412.  There is no dispute as to the facts contained therein.

### II.  Standard of Review of Agency Decision

The Court, in its review of a denial of disability benefits, is only: "to [determine] (1) whether substantial evidence supports the Commissioner's decision and (2) whether the Commissioner's decision comports with relevant legal standards."  *Jones*, 174 F. 3d at 693.  Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. ß 405(g).  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence.  *Id.*  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment" for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision.  *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones*, 174 F.3d at 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve.

*Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 305 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla, but it need not be a preponderance." *Anthony*, 954 F.2d at 295; *see also Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible sources.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

### III.  Burden of Proof

An individual claiming entitlement to DIB under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. ß 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* ß423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

4

*Id.* ß 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 393 (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or a combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, he will be found disabled.

*Id.* at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner at step five to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563. Further, for Title II claims, a claimant must prove that he was disabled prior to the date his insured status expired. *Anthony*, 954 F.2d at 295; 20 C.F.R. ß 404.131. Thus, if a

claimant becomes disabled after he has lost his insured status, the claim must be denied. *Oldham v. Schweiker*, 660 F.2d 1078, 1080 (5th Cir. 1981).

Here, the ALJ found that plaintiff's insured status expired on December 31, 1986. (Tr. 15, 24, 29, 117). Thus the plaintiff was required to establish a disability prior to that date. At step one, the ALJ determined that plaintiff engaged in substantial gainful activity from 1977 through 1980 and thus could not establish disability for that time period. (Tr. 15). The ALJ further found at step two that through the date last insured, the objective medical evidence failed to establish the existence of a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. (Tr. 15). The Court need only determine whether these findings are supported by substantial evidence.

## IV. Review of Secretary's Decision

In determining whether the ALJ's decision is supported by substantial evidence, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age. *Wren*, 925 F.2d at 126; *Owens v. Heckler*, 770 F.2d 1276, 1279 (5th Cir. 1985); *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972).

## V. The ALJ's Decision is Supported by Substantial Evidence

### A. Objective Medical Facts

It is incumbent upon the claimant to demonstrate that he has an "impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." *Muse v. Sullivan*, 925 F.2d 785, 789 (citing 20 C.F.R. ß 404.1520(b) (1990)). A review of the administrative record in this matter reveals that on January 1, 1975, Matos was injured while working for The Bearing House, Inc. (Tr. 170). While adjusting a rack on a plating machine, he fell into a heated cleaning tank and sustained significant burns, primarily on his lower body. (Tr. 170).

Dr. W. J. Burdette initially treated Matos for the injuries sustained during his accident. In his June 17, 1975, medical report, filed with the Texas Employer's Insurance Association, Dr. Burdette indicated Matos had made satisfactory progress, noting that his first-degree burns had almost completely regressed and his second-degree burns were healing without signs of infection. (Tr. 172). The doctor noted that the most severely burned areas were the claimant's lower legs, ankles, and feet, but that he did not expect any possible skin grafts to be extensive. (Tr. 172).

On July 9, 1975, Dr. Burdette again submitted a report noting that Matos was progressing satisfactorily considering the extent of his burns. (Tr. 171). He reported third degree burns on Matos' lower extremities and genitalia that were not yet ready for grafting as well as burns on the claimant's trunk and upper extremities that had not yet healed. (Tr. 171). The report indicates that Matos required careful supervision, having apparently little insight into his condition. (Tr. 170). Dr. Burdette concluded that Matos would likely require hospitalization for at least another month, during which time he would likely be moved from the Intensive Care Unit to a private room. (Tr. 171).

The preceding are the only medical reports contained in the record that pre-date

7

December 31, 1986, the date the claimant was last insured. The record does contain objective medical evidence that the claimant was diagnosed in the late 1990s and early 2000s with several other conditions. While incarcerated, Matos had recurring breakouts in hives, for which he received regular medications, including Benadryl. (Tr. 310-358). On March 20, 2001, Matos was diagnosed with diabetes after complaining of severe weight loss. The doctor noted Matos was not in distress at the time of the exam but had lost about 45 pounds in the past three years. (Tr. 341). Matos was then placed on a daily dose of 2.5 milligrams of Glyburide as well as Cyproheptadine and has since been on various dosages of the medication (Tr. 335). At various times throughout the past eight years, Matos has stated that he has not regularly taken the required dose of his medication (Tr. 314, 304-305, 251, 174). On June 20, 2001, the claimant was diagnosed with Hepatitis C by Dr. Qui Huynh, though Matos was identified as asymptomatic. (Tr. 323, 327). Again, there is evidence in the record indicating that Matos was occasionally not compliant in taking his medications. (Tr. 304, 251). He later underwent a successful liver needle biopsy on Mar 29, 2004. (Tr. 235). The radiologist reported that hematoma was present and the claimant achieved adequate hemostatis. (Tr. 228). In light of the objective medical facts, as more fully set forth above, the Court finds that there is enough evidence to support the ALJ's decision that Matos was not disabled prior to December 31, 1986.

### B. Diagnosis and Expert Opinions

The second element considered by the Court is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded

8

considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F. 2d 482, 485 (5th Cir. 1985); *Oldham*, 660 F.2d at 1078.

In the instant case, the record does not contain any medical or vocational expert opinions or written reports that speak to any disabling condition present in Matos prior to 1986, when his insured status expired. The record does contain laboratory records, dated 2000 and later, that evidence diabetes, Hepatitis C, and hypertension, but not accompanying medical expert opinions.

There is also evidence contained in the record that Matos has been regularly attending vocational training programs at the Veterans' Administration, which suggests he is capable of finding work. (Tr. 298-177). Matos has also participated in "incentive therapy," essentially work for pay, though not technically identified as a job, at the Veterans Administration. (Tr. 291). The claimant testified he earns about $200 a week through this program, and he has received work performance ratings of "excellent." (Tr. 265, 218, 402). In light of the records submitted, the Magistrate Judge concludes that these too support the ALJ's decision.

**C. Subjective Evidence of Pain**

The third element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and neighbors. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395.

The proper standard for evaluating pain is codified in the Social Security Disability Reform Act of 1984, 42 U.S.C. ß 423. The statute provides that allegations of pain do not by

9

themselves constitute evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment that could reasonably be expected to cause the pain. Statements made by the individual or his physician as to the severity of the claimant's pain must be reasonably consistent with the objective medical evidence on record. 42 U.S.C. ß 423; *Hampton v. Bowen*, 785 F.2d 1311 (5th Cir. 1986).

The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

Matos testified at the hearing that he was currently suffering from diabetes, hypertension, and Hepatitis C. (Tr. 403). Matos further testified, however, that these ailments did not really affect his daily activities, provided he took the appropriate medication. (Tr. 403). Matos stated prior to 1986, when his disability status expired, he did not suffer from any medical conditions that "bothered him" and that nothing besides an occasional breakout in hives limited his activities. (Tr. 404-405). However, he did mention that his legs were "real tight" as a result of his burns. (Tr. 407). As to his current limitations, Matos testified that standing for too long, more than a couple of hours, was painful. (Tr. 406). However, he stated that he did not have any trouble sitting or using his hands or arms to reach or manipulate things. (Tr. 406).

In light of Matos's testimony, the ALJ determined that, absent objective medical evidence, Matos's symptoms alone could not establish the existence of a medically determinable physical impairment. (Tr. 16). In particular, the ALJ stated as follows:

> An impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, regardless of how genuine the claimant's complaints

> may appear to be, when there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, a finding of not disabled is required at step two of the sequential evaluation process. (20 CFR 404.1529 and SSR 96-4p).
>
> The claimant testified that prior to 1986 nothing was wrong with him and he had no physical or mental limitations. He indicated he was having problems with hives for which he was given medications but that the hives placed [no] limitations on him. The claimant also indicated that prior to 1986 he was not taking any medications other than for his hives, which resolved the hives. He stated that [he] was diagnosed with diabetes, hypertension, and hepatitis C in the year 2000. The evidence shows that the claimant did sustain burns to his body in 1975 (Exhibits 1F and 2F), but that problem was resolved in less than 12 months. Thus, there is no objective medical evidence of record of a medically determinable impairment prior to December 31, 1986, the date the claimant was last insured for disability purposes.

(Tr. 16). The foregoing findings are consistent with the medical records submitted by Matos and with Matos' specific complaints of pain. The Magistrate Judge is unable to find that the ALJ's findings lack substantial evidentiary support, thus, the subjective evidence of pain also supports the ALJ's decision.

### D. Education, Work History, and Age

The fourth element to be weighed is the claimant's educational background, work history, and present age. A claimant shall be determined to be under disability only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. ß 423(d)(2)(A).

The record indicates that Matos was 57 years old at the date of the hearing, completed his high school education, and had past relevant work as a construction worker, laborer, food service worker, carpenter, mechanic, and janitor (Tr. 400-401). The claimant also testified that he is

currently working at the veterans' hospital as a patient escort, where he earns about $200 a week. (Tr. 401-402). He further stated that he could comfortably carry between 15 and 20 pounds with regularity. The record also reflects that from 2003 to 2005 Matos participated in the Veterans Administration's vocational rehabilitation services. (Tr. 174-296). Therefore, although there is no vocational expert testimony in the record and the ALJ did not comment on this factor directly, it appears there is sufficient evidence in the record to suggest that Matos is capable of engaging in substantial gainful work.

**VI. <u>Conclusion</u>**

Considering the record as a whole, this Magistrate Judge is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 685 F.2d 114 (5th Cir. 1982). As all the relevant factors weigh in support of the ALJ's decision, the ALJ's decision is supported by substantial evidence. Therefore, it is ORDERED that Defendant's Motion for Summary Judgment is GRANTED and that the Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this _____ day of _____, 2008.

Frances H. Stacy
United States Magistrate Judge